Nott, Ch. J.,
delivered the opinion of the court:
The American ship Galen, with a cargo of merchandise owned in part by the owners of the vessel and in part by merchants in Boston, sailed from the Downs in England on the 12th of March, 1798, under convoy of a British ship of the line. On the 11th of April she lost sight of the convoy, and on the 25th of April she was captured by a French privateer. On being carried into Bayonne she was condemned upon the grounds that the cargo consisted of English manufactures *93 laden at an English port; that a portion of the cargo was the property of English owners; that there were irregularities in her róle d’equipago, and that there were passengers on board having no passports. These grounds of condemnation were good according to French law; they were insufficient according to the law of nations. In this court the defendants have interposed a new ground for condemnation — that the ship sailed under convoy of a British ship of the line. On account of the importance of the question and the number of cases to which its determination may apply, the court remanded the case for further argument, has listened with respect to a number of counsel, and has held the case under advisement until the present time. The question to be determined is whether a neutral vessel which sailed under belligerent convoy is liable to condemnation if captured after she has voluntarily or involuntarily separated from the convoy.
There are three classes of cases involving the rights and liabilities of neutrals which should be borne in mind if we would intelligently dispose of the question under consideration :
First. A neutral has a right to trade with belligerents, provided that she does not force, or intend to force, a blockade, and that she does not carry goods contraband of war. ‘ ‘War, ” says Chief Justice Marshall, “gives a full right to capture the goods of an enemy, but gives no right to capture the goods of a friend.” (The Nereide, 9 Cranch, 385, 418.) A neutral may forfeit her neutral character by the fraudulent conduct of the master, bj’ false destination, by resisting search; but apart from these forfeitures it is universal^ conceded that a neutral vessel carrying a neutral cargo from a a belligerent port or to a belligerent port is engaged in lawful trade.
The second class of cases consists of blockade runners. A vessel of this class is engaged ah initio in illegal traffic. From the hour she sails to the hour she returns to her home port she is taking a part in the existing war — she is assisting or endeavoring to assist one of the belligerents and to thwart the military plans and purposes of the other. It is not necessaiy that she be taken in the act of breaking the blockade to be in delicto — she is in delicto from first to last. Figuratively *94 speaking, she has hauled down the neutral flag and run up the flag” of the belligerents in whose behalf she is aacting. Such, a vessel is treated substantially as if she had actually changed her flag for the whole voyage. She is liable to capture and condemnation not only on the outward voyage but on the return voyage, notwithstanding that her homeward-bound cargo may be and. ordinarily is innocent merchandise. Having sailed in the service of a belligerent power she is supposed to continue in that service until she makes her own port. After she has made her home port she is at liberty to resume her neutral flag, and when sailing under it her previous conduct is not open to inquiry.
The third class of cases is where a neutral merchantman sails under belligerent convoy. The doubt which obscures such cases arises from the fact that jurists and writers have sought to justify the condemnation of such vessels — where no justification was needed — by grounding it upon constructive resistance to the right of search. But a vessel sailing under convoy maj^ voluntarily submit to search; she may heave to and allow the search to be made without seeking the protection of the convoy, and the convoying vessels maj^ not resist or attempt to resist search in her behalf. In such a case the reasoning must be artificial which concludes that a vessel which actually submits to search constructively resists it. The true reason why a vessel captured while sailing under convoy is liable to condemnation is that she has for the time allied herself with the enemy; she has become part of the hostile whole. The captor is not bound to accord her neutral rights; it is not his duty to heave to and stop and institute search, and thereby risk his own capture. It is his right to capture and carry her off if he can. She is, for the time, a vessel which must be known by the company she keeps.
Figuratively speaking again, when she joins the convoy and as long as she continues with it she has hauled down her neutral flag and is sailing under the flag of the convoy. It is too late when she falls into the hands of her captor to run up her own flag. The right of capture (not of search) rests upon the fact that she is then a part of a hostile force. Mr. Justice Johnson, in the Atalanta (3 Wheat., R., 409, 424), clearly illustrated the true ground of a vessel’s liability when he likened *95 her to a neutral citizen who enlists in the army of a belliger.ent and is taken prisoner of war, and who is thereby “involved in the fate of a conquered enemy. ”
In these spoliation cases it has been held, after a most exhaustive examination of the subject, by Judge Davis that a vessel captured when actually and voluntarily under convoy is liable to condemnation. (The Nancy, 27 C. Cls. R., 99.) That question may be considered as finally settled, and it is not the intention of the court to open it.
But when a neutral merchantman is separated from a convoy and is alone upon the high seas she is no longer a part of an hostile force. It is said that by having been under convoy she may have deprived the belligerent cruiser from exercising the right of search. But the right of search is only a means to an end. It is not searchj but condemnation which benefits the belligerent power. So long as a neutral vessel, properly documented, is carrying an innocent neutral cargo, with no intent to run a blockade, she may be subject to search, but not to seizure; and so long as she must be released as soon as searched, the captors gain nothing by searching her. It is true that if she had not been under convoy they might, perhaps, if they had met her, have searched her; but her having' been under convoy deprived them of no substantial right, and really saved them from doing a vain thing. As was said by Mr. Justice Johnson in the case just cited (the MiaZania, p.424), “ it is the right of adjudication, if any, that is impaired.” In the case of a vessel separated from the convoy, that “right of adjudication” is restored unimpaired — that is to say, a belligerent cruiser can search, and seize, and carry in. But the “right of adjudication” without a right of condemnation must result in nothing but the liability of the captors. In a word, the belligerent power lost nothing by an innocent vessel having been under convoy, and an innocent vessel gained nothing by having been under convoy except exemption from the delay and vexation of being needlessly searched; and the captors shared in that benefit by having boon relieved from the vexation and delay of a fruitless search.
When wo turn from reasoning to authority we find that the latter, so far as it goes, harmonizes Avith the former. The decision in the case of the Neroide, notable in many ways, is *96 also notable in haying been the adjudication l:y an American court against American captors and in favor of a foreign neutral, a Spanish claimant. The chief question considered by the court and discussed in the opinions was whether a neutral might ship his neutral property on an armed (not commissioned) belligerent vessel. But that vessel had sailed under ■convoy, and, like the Galen, had been separated from the convoy, and the neutral owner of the goods, when he shipped them, had known that the vessel was to sail under convoy. Yet nowhere in the discussion of the case does it seem to have been supposed that that fact would authorize the condemnation of his goods. Though the question was not discussed, it was manifestly involved in the case; it was a fact frequently referred to by the counsel and by the court. Yet the court adjudged that there was no ground for condemnation. Even Mr. Justice Story, in his celebrated dissenting opinion, was manifestly of the same mind. “If,’’says he, “a neutral merchantman choose to continue under the convoy he shows an intention to avail himself of its protection under all the chances and hazards of war. The abandonment of such intention can not be otherwise evidenced than by the overt act of quitting convoy.” And he adds: “ On the whole, on this point my judgment is that the act of sailing under belligerent or neutral convoy is of itself a violation of neutrality, and the ship and cargo if caught in delicto are justly confiscable.”
In the subsequent case of the Atalanta, before cited, almost precisely the same question again came before the Supreme Court. The captor was an American man-of-war; the merchantman was a British armed (not commissioned) vessel; the owner of the goods in question was a neutral, a Frenchman; and again the Supreme Court held, this time without dissent, that a neutral cargo found on board an armed enemy’s vessel is not liable to condemnation as prize of war.
In these two cases it is manifest that there was much more constructive resistance to search than if the neutral owner had shipped the goods in his own vessel and sent them under convoy of a British man-of-war instead of on board of a British armed vessel, one of which had sailed under convoy.
There are, indeed, some' opinions in which it is generally and loosely stated that having sailed under convoy subjects a *97 vessel to capture and condemnation, but an examination of those cases shows that the facts do not sustain the dictum— that the question here involved was not before the court. In Halleck’s International Law it is said:
“The case, however, is very different where the merchant vessel has left the convoy -prior to the appearance of, or attempted search by, the belligerent cruiser. This distinction is forcibly presented by Wheaton in his argument in favor of the American claimants for indemnity for Danish captures under the ordinance of 1810. We know of no j udicial decision dirqetly upon this question.” (Halleck’s Int. L., p. 267.)
No such decision has been brought to the attention of this court, and both upon reason and upon authority we hold that if a party acts in association with a hostile force and relies on that force for protection, he isjy/w haevice to be considered as an enemy, but no longer.
The order of the court is that the findings and conclusions of law heretofore filed be reported to Congress, together with a copy of this opinion.